Good morning. Before we start today, I'd like to express our appreciation to Chief Judge, not Chief Justice, Chief Judge Dennis Jacobs of the United States Court of Appeals for the Second Circuit, who is sitting by designation by the Chief Justice, and to express our appreciation also to the staff of both the Second Circuit and the United States District Court for the Southern District of New York for their cooperation. Our first case this morning is 06-5142 Pennzoil-Quaker State v. United States. Ms. Snyder. Good morning. May it please the Court, Deborah Snyder on behalf of the United States of America. I have reserved three minutes for rebuttal. The issue in this case is whether Pennzoil-Quaker State can use Section 1341 of the tax code to effectively recompute its tax liability for nine prior years in the 1980s based on settlement costs that it paid in 1995 and 1996. The Court of Federal Claims' conclusion that it could do so is erroneous. Just to step back for a minute, what Section 1341 of the code does is it provides a limited exception to the claim of right doctrine. The claim of right doctrine, of course, is the accepted doctrine in the tax law that says that a taxpayer who receives an item of income in one year has to include it in his income in that year, even though he might be required to repay it or part of it at a later time. What Section 1341 does is it provides a limited exception to that rule in cases where the taxpayer is required to restore in a later year that item received in a prior year under a claim of right. Pennzoil is not entitled to Section 1341 benefits for its settlement costs because it did not restore an item of income to another when it paid those settlement costs. Ms. Snyder, you make a lot about the restoration and the use of the word restoration, but let's assume for a moment that we feel compelled to rely on the regulation which defines gross income to include less cost of goods sold. Doesn't that also do away with your restoration argument? No, it does not. and then can claim a deduction because it was established that the taxpayer did not have an unrestricted right to that item. The only way that you can get a deduction for not having an unrestricted right to an item of income is if you pay it back. Or if you have an obligation to pay it back to somebody else. Well, you have to pay it back to another. That's what the statute says, restoration to another. But the thing is in this case, Pennzoil-Quaker State didn't restore an item of income to anyone. And to get back to your question about how you define gross income being dispositive, really that whole issue about the Section 61 regulation, it's a red herring for a few reasons. First, because as I just said, you still have to restore the item of income and Pennzoil-Quaker State in this case did not restore an item of income. My point was if we use the fulsome definition of income to include income less, cost of goods sold, let's accept that. I know the government doesn't agree, but let's assume that we feel restrained by that definition. Then why isn't restoration fit neatly within that? If you restored the money, leaving aside the settlement question, restored the money to the suppliers to whom it was owed, why isn't that a restoration in the context of my definition of gross income? Well, they didn't restore the money to the suppliers. What they did is they paid a settlement in 1995 and 1996 of an antitrust case. But let's assume. So assume hypothetically, though, that we don't buy the distinction the government is trying to make between settlements and giving back the money to suppliers. Then the restoration requirement is met, correct? No, because it's not the same item. You have to have restored all or part of the same item that you received in a prior year. But there's money here, though. I mean, it's fungible, right? They paid for the oil. Money is all there. Under Section 1341, it's not. It requires that you receive an item in one year and pay back all or part of it in a later year. The classic case is, of course, under Lewis, where an employee receives a bonus and then pays it back in the next year. I mean, the other problem with that is that that definition is completely speculative. Which definition? The definition of gross income as a computational result or as a unit as the Court of Federal Claims held of gross receipts less cost of goods sold. Well, that's language from a regulation. That's the language in the regulation, but in this case it's speculative because what you have to do is assume that the costs would have been the same costs had they been paid in the 1980s. But that's simply unprovable. Pennzoil-Quaker State can't prove that it would have paid to its suppliers in the 1980s the same costs that it paid to settle the antitrust lawsuit in the 90s. I mean, they were sued for violations of the Clayton Act, which provides for treble damages. I mean, they settled the case to avoid the risk and the potential liability and the cost of litigation. It's not the same item. So even if you accept that regulation and were to find that it applies here, which the government doesn't, but even if you were to accept that, it's still fundamentally speculative because they can't prove that it was the same cost. What level of proof is required in this situation? What if they had said, come to Pennzoil and said, we're going to sue you because we think you owe us money. And Pennzoil had sat down and done a calculation and said, yeah, you're probably right. Let us pay you this $4 million. Would that be sufficient? That's not the issue. The issue is what they have to prove, essentially, is that they included an item in gross income in a prior year that they restored. And that's what they can't prove. Well, see, you keep shifting. I mean, do you shift the restoration? Then we're talking about settlement, and now in response to a settlement question, you're going back to the restoration. Let me just get into it. I mean, the government says there's something about the settlement that makes the amount of money we're talking about here, I think this was $4 million something, too speculative. And my hypothetical is, what if there was no settlement of an actual lawsuit, but what if the parties had just gotten together in the same year and decided this is what we think we owe you? Does that make it okay? Would that fit within what the government finds acceptable? Well, no, because they still can't point to something they received in a prior year that they paid back. I mean, paying an expense is not the restoration of an item of income. I mean, what they did in 95 and 96 is they paid an expense. Well, why can't they say that they received oil for an amount of money that was insufficient by reason of conspiracy, and that therefore they received value that they should not have received, and they're now restoring to the oil suppliers this value that they cheated them out of? But they're not restoring an item of income that they received. I mean, what they're saying is that they paid something in prior years and they should have paid more. They're not saying they got something and included it in income and they shouldn't have. But they're saying they got the oil. They got more oil than they should have, based on what they paid. That is to say they underpaid for the oil, and they received the oil, and that that has a value, and they're now restoring, by way of money, a value that they conceived now that they should not have enjoyed. Well, the oil isn't an item of income. I mean, what they're saying is that their gross income was overstated because their costs were understated, but Section 1341 doesn't apply to the understatement of costs. It applies when you receive something specific, included in an income, paid tax on it and have to pay it back in a later year. The other problem with the definition, I mean, even if you were to accept their theory that the item of income was a computational result, well, then they fail the deduction requirement of the statute because what they're saying is that while the settlement payments were additional costs of goods sold in the prior year, but costs of goods sold are not a deduction. They got the deduction in 1995 and 1996 as a business expense. That's how the IRS allowed them to deduct it in the current years, and that is the fundamental inconsistency in the Court of Federal Claims opinion and in the taxpayers' theory is that even if you buy the approach that, well, they understated their costs or they overstated their gross income, and, I mean, even if you buy that, that the payments were additional costs of goods sold for the prior years, then they don't get a deduction in 1995 and 1996 for paying those costs because costs of goods sold are not a deduction, and the taxpayer doesn't claim that they are. Well, let me, actually, on that point, let me move on to, I guess, one of the government's last arguments, which is even if you lose on the first on A, this still falls within the inventory exception. That's right. Doesn't the government's argument, isn't the government's argument with respect to B2 predicated on a definition of gross income and deduction in gross income that consists of what the Court of Claims, how the Court of Claims interpreted Section A? Yes. Because that requires applying the definition that we've got in that Regulation 613, correct? Right. What the government is arguing is that even if this court accepts the taxpayers' argument that what they paid in 1995 and 1996 was an additional payment for crude oil, even if the court were to accept that, well, then, clearly, the payment was made with respect to an item that was included in gross income by reason of the sale of inventory. So, yes, even if this court were to find that the taxpayer met all the requirements of 1341A, which we don't believe, but even if that were the case, then, clearly, they fail the inventory exception and they're barred from 1341A relief under Section 1341B. Let me ask a quick question before your time runs out. What's the status? You referenced two cases in the briefs, one that's at the Third Circuit and one, I think, the Ninth. What's the status? Anything new on the status of those cases? The Third Circuit case is the Alcoa case where it's a very similar argument. The taxpayer said, well, in that case, what happened is the taxpayer paid costs in the current years to clean up past contamination, and it was the same theory. They said, well, our costs were understated in prior years, so our gross income was overstated. And the district court, in that case and in the companion case of Reynolds-Meadows, said, no, Section 1341 doesn't apply to allegedly understated expenses. There's no restoration of an item of income. Alcoa was argued before the Third Circuit in mid-May and is a waiting decision. The Ninth Circuit case, you must be referring to Texaco, which was the case on the inventory exception. That case, I believe, has been fully briefed and it's a waiting argument in the Ninth Circuit. Reynolds-Meadows, which is the other district court case on which Alcoa relied, is pending in the district court. That's Eastern District of Virginia. Yes, I believe so. It's pending on an unrelated issue. The government, do I read the briefs right? The government is asking that we not look at the settlement agreement as it's written, but to look at what it really was, a settlement of an antitrust violation, rather than, as it was stated in there, that these are just additional payments to avoid the implication. Well, I thought what the settlement agreement said is that Pennzoil-Quaker State, or Quaker State actually, didn't admit liability, but they were settling to avoid the risks and costs and expense of litigation in order to obtain releases from the other parties. So I think when you look at that, it further proves the government's argument that it's not the same costs and that their argument is fundamentally speculative. But if we brought that argument, then, of course, that aviates the whole 1341 argument altogether, doesn't it? Well, it proves, for purposes of Section 1341, that they didn't restore an item of income, that they incurred a business expense in the current years to settle a lawsuit, and that they didn't restore anything. But the basis of their argument, though, is reading what the settlement agreement really was, rather than what it said. I think you can read it for what it says and still accept the government's argument. I think it says what they're doing is settling a lawsuit. I think Quaker State's theory is that, well, the settlement was really additional payments for crude oil in the prior years. Right, as opposed to a settlement of a breach of the law. Right, but I think the settlement payments were not, in fact, additional payments for crude oil. They were settlement of an antitrust lawsuit that exposed them to all sorts of other liabilities. Okay. Thank you. Thank you. Mr. Lowy? Lowy. Lowy. May it please the Court, the reason we're here is that Quaker State was whipsawed by a change in tax rates and, consequently, it paid tax on profits it didn't have. And just to briefly explain how that happened, it included and paid tax on gross income, and that gross income it measures by the amount of money it receives from its customers, minus the cost to manufacture and sell those products. And here, after gross income had already been reported and taxed and tax had been paid, they were sued by several crude oil suppliers claiming that Quaker State had underpaid for the amount of crude oil they purchased. Quaker State ultimately settled that case. They made more payments to the crude oil suppliers. They claimed they underpaid. There was an agreement in violation of the antitrust law. Correct. The complaint alleged a variety of wrongdoing, and then, in terms of damages, claimed an underpayment of the amount paid, and Quaker State ultimately settled that suit and agreed to pay more to its crude oil suppliers. Well, Quaker State, for reasons sufficient to itself, apparently entered into a settlement agreement in which it did not admit liability. It said, we're just paying this because you're here, and you're a pain in the neck, and you have all these claims, and this seems satisfactory to us, and it's just, you know, we don't really owe you anything, but we're just going to pay you this to make you go away. Why shouldn't we accept that at face value? I mean, how can you say, characterize the transaction one way for the purpose of settling for very important reasons, you don't get sued by a million other people who make the same claim, and then, for tax purposes, characterize it a different way? Well, two points. First of all, Quaker State had one relationship with these crude oil suppliers, and any amounts it paid were additional amounts to obtain the crude oil that they purchased from them, so I think that's the only way to fairly characterize it. Some people settle lawsuits just because the bills are running, you know, a million dollars a month, and for four or five million dollars you can get rid of the whole thing? That's correct, but then when you look for the tax consequences, courts look to the origin of the claim and try to glean what the underlying action was about, and here the underlying action was about an alleged underpayment of crude oil. And maybe, I'm not sure if Your Honor, was also getting into sort of the Culley principle, and that's the question of whether or not it actually appeared to the taxpayer in the earlier year that they had an unrestricted right to the income, and what's important here is that there was no finding of guilt, there was no indictment, and Chief Judge Damage, who was also the trial judge in Culley, I think, analyzed this very well. The only thing I would add to his analysis is that applying this principle, the court should require that there's some extrinsic finding of guilt, otherwise the courts will get embroiled in very complex trials just to establish this one word in Section 1341. Surely this case shouldn't be remanded back with instructions to Chief Judge Damage to try a complex antitrust matter just to establish this one word in 1341. I think Judge Prost focused on the right fundamental question, and that's the definition of gross income, and the government, Quaker states always maintain it's a unit concept, gross receipts minus cost of goods sold. The government wants to lop off gross receipts and define that and that alone as gross income, and Your Honor, that's like trying to clap with one hand. It doesn't work. You need both sides of the equation. You need gross receipts, cost of goods sold, and together they are an item of gross income. But it seems to me that your problem, even if we accept that, is that that definition brings us right down to the inventory exception in B2, and then you're left with an argument about the tail end of a regulation and whether that's all inclusive or just an example, right? Is that where we're left by your definition of gross income? Well, I think you're right. That's what you're left with in terms of 1341A, and then you get to B, the inventory exception. The inventory exception, there are a lot of arguments there. I think they're all much to do about nothing, because the inventory exception does not apply for the simple reason that it's inapplicable when the later year payment is made to someone other than from whom the goods were originally sold, and all of the authorities that have considered this distinction have accepted that. In fact, the Internal Revenue Service itself, on two separate occasions, in a two-field service advice that it cites at pages 44 and 45, it held there oil producers sold crude oil inventory to customers and also paid royalties to royalty holders, and the difference between the two was the profit it reported. In a later year, the royalty holders sued the oil producers claiming additional royalties, and the oil producers restored an amount to the royalty holders, paid an additional amount to the royalty holders, and the IRS on two separate occasions expressly held that the inventory exception was inapplicable. Even though the original sale was the sale of crude oil inventory, it was inapplicable because the restoration was to a party other than to whom the goods were originally sold. Were these revenue rulings? These were field service advice. Yes, but you're not suggesting, are you, that we give sort of deference or chevron deference or anything like that to one of these? I mean, you've argued in your brief that we shouldn't give chevron deference to a revenue ruling. You're not suggesting otherwise with respect to this? That's correct, but the field service advice are significant for a couple of reasons. First of all, they're the only pre-litigation positions issued by the government. Of course, they are asserting the revenue ruling, which we believe is a blatant bootstrap of their litigating position. It's also important because they've raised the deference issue, and under Meade, under Skidmore, under Cleveland Indians Baseball, which the government cites, one of the factors the courts look to in evaluating whether to defer to an agency interpretation is whether or not it's a longstanding position, whether or not it is a longstanding consistent position, and these two field service advice shows that, number one, this is a new position, and, number two, those field service advice flatly contradict the IRS's current position. And Quaker State also, on pages 44 and 45, cited case law, the Kylene case, and also commentary that also agreed that in this sort of what I'll call triangular relationships, where you have a payment to someone other than to whom the goods were originally sold, the inventory exception is inapplicable, and that's the case here for Quaker State. Now, turning to the internal consistency argument the government's made, first of all, basic tax accounting demonstrates that there's nothing inconsistent. Sellers of inventory, they must capitalize their expenses into the goods to which they relate, and then they realize those expenses over time as the goods are sold. But in rare instances such as here, where the goods have already been sold, there's nothing to capitalize them to, so it's expensed immediately. And 1341, of course, it's always the situation in a 1341 case that you have a deduction in the current year and it was something else in the earlier year. On what theory is this expense, this expenditure, allowable in the year in which it was made? There are multiple theories under which it could be deductible. The easiest one is 162. It's an ordinary and necessary business expense. And while ordinary and necessary business expenses do get capitalized if there are goods to which they relate that haven't been sold yet, and if you are an inventory taxpayer. The cost of goods sold is not an ordinary and necessary business expense. You can't deduct the cost of goods sold as an ordinary and necessary business expense. You have to do a subtraction and it's gross income on which you pay taxes. It's not itself a deduction. Well, that's true. But in the current year, when the Quaker state made these payments, it should be beyond dispute that they are entitled to a deduction. And that deduction under various theories including section 162. But what section 1341 does, all section 1341 cases have some hypothetical quality that adheres in them. And that is you take the computation of the credit is the earlier year's computation of tax minus the hypothetical tax based on what you know today. And that's what Quaker state did. But you would concede that the reason that the settlement amount is allowable in the year in which it was made as an ordinary and necessary business expense doesn't really comport with the theory on which you were arguing it should be, as it were, deductible in the prior eight or nine years. The theory is being transmuted into characterizing, recharacterizing it as a cost of goods sold. Well, I mean, I think the whole point of 1341 is to look at the, recompute the earlier years based on the information today. And it is a deduction in the current year just as all 1341. But you would concede that it's two different theories in which you were doing that. It's allowable in the current year on one theory. And you want to make it deductible in the prior years based on a different theory. You're saying that's not a problem, but that's a fact. I think, I wouldn't use those words, different theory, but I think you appreciate our point. And to turn to the question of whether, and maybe this ties in, whether that earlier years, whether the effect in the earlier year on the gross income, whether that's speculative. It's the government that's impermissibly speculating. And they somehow convinced the district court in Reynolds to speculate about changes in behavior if price points were different. And this was footnote seven of the Reynolds opinion, in which the court held that, or the court stated that, well, if Reynolds, if their cost of goods sold had been lower or had been higher in the earlier period, well, maybe they would have just changed their price point and therefore they can't establish that gross income was actually any lower. I mean, in this type of speculation, this would invalidate even the most well-established, uncontroversial section 1341 cases. It would even invalidate the treasury regulation example. There, a taxpayer sold his home to a buyer and reported the gain on that sale. And then in a later year, a real estate broker sued for a 5% commission. And in order to resolve that suit, the taxpayer made a payment to the real estate broker, and that qualified for section 1341. Well, one could speculate if the seller had known that it was going to have to pay a 5% commission, maybe it would have just raised the price of its house. And so under the government's sort of speculation that it's trying to get this court to engage in, even that regulation wouldn't meet the established requirement. But your theory, I mean, your argument is that we should distinguish this from Reynolds and the other cases because there's a difference, maybe this goes to Judge Jacob's point, that there's a difference between the waste disposal expenses in those cases and your case. Yes, there's certainly some important distinctions between Quaker Estate's case and the Reynolds and Alcoa cases. And just to mention a couple of them, number one has to do with the definition of gross income. As the government argued in those cases, in Reynolds, for example, Reynolds had never included remediation costs in its cost of goods sold, so it couldn't establish that paying remediation costs would somehow increase its cost of goods sold, whereas Quaker Estate's situation is totally different. Quaker Estate, the main component of its cost of goods sold during the earlier period was the price of the crude oil, and so I think that's an important distinction. Number two has to do, I think you can categorize it as nexus, and that is in Reynolds in the earlier period, Reynolds didn't have any relationship with its payees in the later period. Its payees in the later period are presumably the contractors that undertook the remediation work. And so the payments in the later years couldn't in any way be considered an adjustment to the price paid in the earlier period, where Quaker Estate's situation is very different. It has one relationship with these crude oil suppliers. It purchased crude oil from them in this earlier period, and the additional payments in the later years were effectively a price adjustment on that lawsuit. Another distinction with the Reynolds case, Reynolds, because they involved retroactive environmental laws in the earlier period, they had an actual absolute right to the gross income that they reported, and that's different in Pennzoil Quaker Estate's case, where the earlier year gross income was under this cloud of a latent lawsuit. And just to conclude, Section 1341, it is a remedial provision. We believe Quaker Estate's application is consistent with that remedial purpose, and therefore this court should affirm. All right, thank you. Commissioner Leiter. Yeah, just to follow up on it. What about the field service advice that your colleague has said flatly contradicts the position you're taking here with respect to MRT? Oh, well, they don't. As a preliminary matter, field service advisories are internal documents prepared by the IRS. They are non-precedential. They are not supposed to be relied upon as authority, and that's the government's position with respect to those FSAs. It's a completely different species from a revenue ruling, but nothing, there is no authority that holds the inventory exception is limited to payments to customers, including those FSAs, including the Colleen case. There's nothing that says that, and it's completely not supported by the statute. The statute says that 1341A does not apply to any deduction allowable with respect to an item that was included in gross income by reason of the sale of inventory, and there's no basis in the statute or the regulations or any other source for restricting that to payments to customers. A couple other things. Just to get back to something that the taxpayer said about Reynolds, it actually was the taxpayer's theory in Reynolds and Alcoa that the remediation expenses were included in costs of goods sold. That's what they were saying, that they included cleanup costs and costs of goods sold, and so when they paid them later, it meant that their earlier costs were understated and their gross income was overstated. But Reynolds did involve the cost of waste disposal, not the cost of goods sold, right? Well, they were saying they included waste disposal costs in their costs of goods sold. So it's the same theory that the court rejected there. Okay, I think we'll have to leave it there. Okay, thank you. Thank you very much. Case is submitted.